[Crim. No. 1502.   Third Appellate District.—August 8, 1936.]

THE PEOPLE, Respondent, v. RICHARD DIXON, Appellant.

A. F. Scheidecker and DeCastle & Devoto for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted of the crime of unlawfully and feloniously taking and driving away the automobile of Rose Mantua without her consent, contrary to the provisions of section 503 of the Vehicle Code of California. He also pleaded guilty to the conviction of the prior felony of passing a fictitious check. He was sentenced to imprisonment in San Quentin state prison for a term of from one to five years. ■■ On appeal it is contended the evidence fails to support the verdict and judgment for the reason that it does not appear that the defendant took from the owner thereof the machine or drove it away.

The evidence amply supports the verdict and the judgment of conviction of the crime of unlawfully and feloniously taking and driving away the automobile of Rose Mantua without her consent contrary to the provisions of section 503 of the Vehicle Code of California. The defendant failed to take the witness stand in his own behalf. It appears without conflict that he lived with his mother at Sebastopol. Clarence Johnson testified that Dixon told him a few days prior to the commission of the offense that he was going to Oregon; that he was "supposed to leave Monday morning", following the Sunday on which the machine was taken. Saturday night, January 25th, Johnson took Dixon and three sisters by the name of Camotta in his automobile to a dance at Frati's place at Bay near Bodega in Sonoma County. Dixon was blind in one eye and he wore a pair of dark glasses and carried an overcoat. He was able to drive an automobile. It was arranged that Dixon was to ride back to Sebastopol with Johnson after the dance. Dixon was a stranger to most of the people at the dance. When he arrived he left his overcoat in charge of Del Santo, who was a cook and an attendant at the dance hall. Dixon remained at the dance until about 11:30 P. M., dancing and taking an occasional drink. He did not appear to be intoxicated.

Rose Mantua owned the Chevrolet car which is involved in this action. She drove it from her home to the dance at Bodega where she arrived about 10 o'clock that night, and left the machine parked in the street near the hall while she remained at the dance until about midnight. She did not

know Dixon and did not consent to the taking or driving of her machine by him or by anyone else. About 11 o'clock Kate Camotta left the dance hall and went in company with the defendant down to the beach near by. She testified that they quarreled at the beach and that he left her and "ran up toward the highway" in the direction where the Mantua car was parked. She said "he didn't go in the dance hall" again. She returned to the hall, but he was not there. That was about 11:30 o'clock. Dixon was not seen at the dance hall after that. He did not return for his overcoat, nor did he notify Johnson he would not drive back with him to Sebastopol.

Mr. Mazzoni, who attended the dance at Bay, knew Rose Mantua and her automobile well. He saw her drive her car to the dance and park it in the street near by. He also saw the defendant about the dance that night. He testified that about 11:30 or 12 o'clock "we went out to the door (and) saw the car as it went up the road, and it came back again. Q. Which way? A. When he first took that car (he) came toward Bodega, went up about a fourth of a mile, turned around and came back and went up toward the coast . . . right through Bay. Q. Did you see anyone in that car at that time? A. I seen one guy in it. . . . It was going in the direction of Jenner." He testified that the first time he saw the car drive by, he recognized it; that he did not notice particularly, but he thought it was Rosie Mantua driving the car, but he said that "the second time (he) saw the car, it looked like a man" who was driving it. About midnight Rose Mantua left the dance hall to return home. She then discovered that her car was gone. She promptly notified the officers of the theft.

From Bodega there is a very rough and winding mountainous road by way of Jenner up the coast to Stewart's Point, a distance of forty-one miles. From that point the road runs easterly through the mountains to Healdsburg, and thence up the Redwood highway en route to Oregon, where the defendant had told Johnson he was going on Monday.

About 11 o'clock the following forenoon two men were driving their automobile toward Stewart's Point. When they reached a point about one mile east of that place they were accosted by the defendant who stood in the highway. He had a bad bruise and dry clotted blood on the left side

of his face. He was alone. No other persons were in sight. He wore no hat and his glasses were gone. He asked them if they were going to Healdsburg. They said they were not. Later he tried to persuade one of them to take him to Healdsburg. As they passed along the highway they saw the automobile in a wrecked condition in the gulch a hundred yards from the road. Regarding the question as to whether the defendant was in the Mantua car at the time it was wrecked the witness Maruffo testified: "Did he (defendant) state to you that he was in the car which you had seen down in the canyon? A. I think he did . . . I think when I asked him, when he went off (the road) I asked him how it happened he said he just came up the hill there and went off the road. . . . He said he had an accident." The witness testified that when the defendant was asked if anyone else was hurt he said, "There was three or four with him, but he don't remember himself." At least no other persons were in or about the wreck, or along the highway in that vicinity. No other person was seen in the car. And the absence of other persons was not accounted for. It seems evident that no other person was with him in the car. These were questions for the determination of the jury.

Later the officers were notified of the accident. The car was recovered and identified as the automobile belonging to Miss Mantua. Blood was found on the front cushion and on the right interior side of the machine.

This evidence seems conclusive of the fact that Dixon took the car with the purpose of driving it to Oregon just as he told Johnson he intended to do the following Monday. He left the dance about the time the machine disappeared from the place where it had been parked on the street. He failed to inform Johnson that he did not intend to return with him to Sebastopol. He told no one of his sudden departure. One man thought he saw a man driving the car out of town toward Jenner, which was the direct route to Stewart's Point. The following forenoon the defendant was found injured in the vicinity of the wrecked machine. In spite of his inconsistent statement that there were three or four of them involved in the accident, no one else was seen, and the absence and identity of the others were not accounted for. The defendant admitted he had an accident and that he was in that car when it occurred. Yet he showed no inclination

to recover the machine. There was a severe wound and dry blood on the side of his face. Corresponding blood was found on the cushion and on the interior of that very machine. There is no reasonable doubt that the defendant took and drove the Mantua automobile away from the vicinity of the dance without the consent of the owner and that he ran it off the roadway into the gulch, wrecking the car and injuring himself. The evidence is susceptible of no other reasonable conclusion.

It is harmless and immaterial that the trial judge said in denying defendant's motion for an instructed verdict that: "If I did not have a right to remedy a miscarriage of justice, I would grant it in a minute." The court did subsequently formally deny a motion for new trial. We must assume that more mature consideration of the evidence, together with additional testimony which was supplied by both parties, convinced the judge that there is ample evidence to support the verdict and judgment.

There appears to be no abuse of discretion on the part of the trial judge in denying the motion for a new trial. The granting or denying of a new trial on the ground that the evidence is insufficient to justify the verdict where there is a substantial conflict of evidence, rests so completely in the discretion of the trial court that its action is conclusive upon the appellate court, unless it clearly appears there has been an abuse of discretion. (*People* v. *Driggs,* 111 Cal. App. 42 [295 Pac. 51]; *Boness* v. *Helphinstine,* 132 Cal. App. 677 [23 Pac. (2d) 420]; 2 Cal. Jur. 905, sec. 533.) No such abuse appears in the present case.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.